# UNITED STATES DISTRICT COURT

## District of Massachusetts

| | |
|---|---|
| **Kaveh Lotfolah Afrasiabi**, an individual and | ) Case No: |
| On behalf of the citizens of Commonwealth | ) CLASS ACTION COMPLAINT |
| Of Massachusetts, | ) DEMAND FOR JURY TRIAL |
| Plaintiff, | ) |
| | ) |
| Versus | ) |
| | ) |
| **UNIVERSAL CITY STUDIOS LLC**, d.b.a., | ) |
| **UNIVERSAL PICTURES,** | ) |
| a California limited liability company; and | ) |
| **Christopher Nolan,** | ) |
| Defendants | ) |

## COMPLAINT

Plaintiff Kaveh Lotfolah Afrasiabi ("Plaintiff") brings this class action complaint against Defendants Universal City Studios LLC, doing-business-as Universal Pictures and Christopher Nolan ("Defendants"), individually and on behalf of all others similarly situated, and alleges upon personal knowledge as to Plaintiff's acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by the Plaintiff.

## **NATURE OF THE ACTION**

1. This is a consumer protection class action arising out of Defendants' false, deceptive, and misleading advertising of the 2026 movie Odyssey

2. Defendant Universal Pictures is an American film production and distribution company that advertises, sells, broadcasts, licenses, and distributes feature films, including a movie released in the year 2026 titled Odyssey.

3. Among other deceptions, Defendants' nationwide advertising and promotion of the movie Odyssey represents to prospective movie viewers that the scene where the leading character, Odysseus, played by the actor Matt Damon, shouts "let's go" leading an army behind him on a beach is the audio and visual to look like a standard, heroic battle charge into combat, yet it turns out to be a promotional trick that deceives the audience, as part of the Defendants' effort to lure the prospective audience to the theaters with the expectation of watching a battle scene at the beach.

4. The Defendants, in seeking to project the above-said false impression on the mind of prospective audience, deliberately do not show Odysseus's full hands in the above-stated scene, in order to give the false impression that he is holding a sword. But since Odysseus in the actual movie scene is depicted simply running toward his ship, and not toward any combatant enemies, the deceptive editing helps to perpetuate the false impression with the prospective audience.  Accordingly,

Defendants' advertising and promotion of the movie Odyssey is false, misleading, and deceptive. The following image is a true and accurate screen shot from the Defendants' movie trailer for Odyssey.



5. Plaintiff brings this action individually and on behalf of all other similarly situated consumers to halt the dissemination of Defendants' false, deceptive, and misleading representations, to correct the false, deceptive, and misleading perception Defendants' representations have created in the minds of consumers, and to obtain redress for those who have paid for attending showings of the movie Odyssey in the Commonwealth of Massachusetts.

6. Numerous viewers have complained that the "The trailer completely TRICKED US with these scenes," e.g., "It made it look like Odysseus was yelling "Let's go!" as he and his men CHARGED HEROICALLY into battle.

Then you watch the movie... and you realize it wasn't a battle cry." *See Sample Viewer reaction, identified herein as Appendix No. 1.*

7. Defendant Nolan, who has played a direct role in the creation of the movie Odyssey's Trailer, has dismissed the complaints of misleading advertising above-mentioned as "irrelevant." *See Appendix No. 2.* Nolan has in all likelihood played a direct role in the creation of the Odyssey's trailers.

## **PARTIES**

8. Plaintiff Kaveh Lotfolah Afrasiabi ("Plaintiff Afrasiabi") is a political scientist and author of more than thirty books and over 900 articles, a resident of the Commonwealth of Massachusetts since 1973 and, at all times relevant to this Action, has resided in Massachusetts.[1]

9. On several occasions in late June and early to mid-July 2026, Plaintiff Afrasiabi watched Defendants' advertisement of the movie Odyssey, in the form of a movie

---

[1] Plaintiff Afrasiabi has extensive legal background and is the former pro se plaintiff in the civil rights action against Harvard University, Afrasiabi v. Harvard, 12200EFH (D. Mass, 1998), which went to a ten-day jury trial featuring the late CBS' Mike Wallace, filmmaker David Mamet, and the late historian Howard Zinn, testifying as his character witnesses.

trailer streamed both on television as well as the internet (e.g., youtube).[2] The movie trailer which Plaintiff Afrasiabi watched was deceptive and misleading. Among other false representations, the trailer promoted the idea that there is a battle scene by the ocean following the heroic battle charge of "let's go" by the leading character, Odysseus when, it turns out in the movie, there is no battle and only a race to a ship.  Persuaded by the movie trailer to view the film Odyssey at a theater (in Watertown, Massachusetts), in part because of the expectation of seeing an impressive battle scene casting thousands, generated by the false advertising, Plaintiff Afrasiabi paid $18.00 for a ticket and, upon watching the film, at Arsenal Mall Theater on July 18, 2026, discovered that he had been tricked and there was no battle at the scene mentioned above.

10. Plaintiff Afrasiabi, by paying to view the falsely advertised movie Odyssey, suffered injury-in-fact and lost money.[3]

11. Had the Plaintiff Afrasiabi known that the trailer for the movie Odyssey was misleading and deceptive, he would not have paid to view the movie Odyssey.

12. Defendant Universal Pictures is a limited liability company with a principal place of business at 100 Universal City Plaza, Universal City, California 91608.

---

[2] Defendants' official trailer for the movie Odyssey on Youtube has been viewed by more than 58 million viewers: https://www.youtube.com/watch?v=Mzw2ttJD2qQ.

[3] . In the landmark case of *Woulfe v. Universal City Studios LLC*, 2:22-cv-00459, (D. California, 2022) a judge decided that trailers are commercial speech, not protected artistic expression, meaning studios can be sued if trailers deceptively promote a film.

13. Defendant Christopher Nolan is a British citizen and the 2026 movie Odyssey's writer, producer, and director.[4]

13. Defendants developed and produced the movie Odyssey in multiple locations and marketed, advertised, promoted, and distributed the movie to hundreds of thousands, if not millions of consumers in the Commonwealth of Massachusetts. Likewise, and more specifically, Defendants' false, deceptive, and misleading advertisements above-mentioned were shown and distributed in the Commonwealth of Massachusetts.

## JURISDICTION AND VENUE

14. The Court has original jurisdiction under 28 U.S.C § 1332 (d)(2) ("Class Action Fairness Act" or 'CAFA") because the matter in controversy, exclusive of interests and costs, exceeds the sum or value of $5000,000.00 and is a class action in which there are in excess of 100 class members, and some of the members of the class are citizens of the Commonwealth of Massachusetts, different from the Defendant Nolan, thus satisfying the minimal diversity requirement.

---

[4] The question of what role Defendant Nolan played in preparing the movie trailers should be the subject of discovery in this action, pursuant to the relevant federal rules of civil procedure.

15. This Court has personal jurisdiction over Defendants because Defendants conduct business in the United States and developed, marketed, advertised and distributed the movie Odyssey throughout the United States including in the Commonwealth of Massachusetts, rendering exercise of jurisdiction by the US District Court for the District of Massachusetts permissible.

## **FACTUAL ALLEGATIONS**

16. Movie trailers are the traditional standard for advertising movies in the United States.

17. Movie trailers are understood by movie goers and consumers to convey what actions will appear in the advertised film.

18. Defendants' Odyssey movie trailer(s) were used by Defendants as advertisements for the film.

19. Defendants' Odyssey movie trailers were used by Defendants as the primary advertisement for the film.

20. Defendants knew that consumers would rely on the content of the Odyssey movie trailers when deciding whether to go to a theater to view the film.

21. Defendant Universal Pictures creates, distributes, and publishes its movie trailers, including the movie trailer for Odyssey, for the purpose of enticing

consumers to pay for purchasing the tickets for viewing Defendants' films, including the movie Odyssey.

22. Defendants expected that consumers would rely on the content of the Odyssey movie trailers when making decisions whether to purchase tickets and view it at a theater.

23. Defendants' Odyssey movie trailers aired or were accessible several months prior to the movie's opening at theaters across the United States, including in the Commonwealth of Massachusetts.

24. Both on their television as well as online promotion of the movie Odyssey through the movie's trailers, Defendants relied in part on the deceptive and misleading scene (of a non-existing battle at oceanside) above-mentioned to entice consumers to purchase tickets for viewing the movie Odyssey. Defendants, through the deceptive trailers for the movie Odyssey, falsely conveyed to consumers throughout the United States that movie features a particular battle scene by the ocean when, in fact, it does not. Defendants' representation of this matter in the movie trailer is in the film Odyssey.

25. Defendants' inclusion of the deceptive and misleading scene above-mentioned lead the prospective viewers to believe the movie is more action-packed than is actually the case.

26. Plaintiff Afrasiabi was surprised, frustrated, and felt upset at being duped by the slick and deceptive trailers of movie Odyssey, after watching the movie and realizing that the movie's advertisers and promoters had behaved unethically and, in effect, cheated on the consumers by giving them false impression of the movie through the deceptive trailers above-mentioned. Based on the similar complaint of many other viewers of the movie Odyssey, it is abundantly clear that many other viewers of this movie in the Commonwealth of Massachusetts shared similar sentiments toward the movie and its misleading trailers.

27. Defendants deceived the consumers by raising their expectation of watching an action (i.e., epic) battle scene, featuring a cast of thousands, only to find out after watching the movie that they had been manipulated by an advertising "trick." Consumers, including movie viewers, purchased tickets for the movie Odyssey, by relying on the content of the trailer of the movie when deciding whether to spend money on viewing the film.

28. Since the consumers were not provided with the movie product that were (tacitly) promised by the Odyssey movie's trailers, above-mentioned, they were effectively provided with a much less impressive movie, i.e., certainly below the bar of an original "epic" movie. Such consumers were not provided with the expected value of their purchase as a direct result of the misleading and deceptive trailers.

29. Defendants' false, deceptive, and misleading advertisements have been disseminated to the public continuously since at least the Summer of 2025, and are still being disseminated in August of 2026, and Defendants will continue to deceive the public with such false advertisements unless it is enjoined from continuing to engage in such dubious and unlawful conduct.

## CLASS DEFINITION AND ALLEGATIONS

30. Plaintiffs reassert and reallege all of the allegations contained in the foregoing paragraphs as though the same were fully set forth herein. 85. Plaintiffs, pursuant to Fed. R. Civ. Pro. 23(b)(2) and 23(b)(3), bring this action on behalf of themselves and those similarly situated and seek certification of the following classes:

### Massachusetts Class

All persons who purchased in the state of Massachusetts any tickets for theater viewership of the movie Odyssey, within the applicable statute of limitations, for personal use until the date notice is disseminated.

31. Certification of Plaintiff's claims for class action is appropriate because Plaintiff can provide the elements of his claim on a class wide basis using the relevant evidence as would be used to prove those elements in individual actions alleging the same claims.

### Numerosity – Federal Rule of Civil Procedure 23(a)(1)

32. The members of the Class are so numerous that individual joinder of all Class members is impracticable. Defendants have sold at least hundreds of thousands of movie tickets, or online or physical movie rentals or purchases, to Class members.

**Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)**

33. This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation: (a) Whether the representations discussed herein that Defendants made about Odyssey were or are true, misleading, or likely to deceive; (b) Whether Defendants' conduct violates public policy; (c) Whether Defendants engaged in false or misleading advertising; (d) Whether Defendants' conduct constitutes violations of the laws asserted herein; (e) Whether Plaintiffs and the other Class members have been injured and the proper measure of their losses as a result of those injuries; (f) Whether Plaintiffs and the other Class members are entitled to injunctive, declaratory, or other equitable relief.

**Typicality – Federal Rule of Civil Procedure 23(a)(3)**

34. Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through the uniform prohibited conduct described above.

**Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4)**

35. Plaintiffs are adequate representatives of the Class because Plaintiffs' interests do not conflict with the interests of the other Class members Plaintiffs seek to represent; Plaintiffs have retained counsel competent and experienced in complex commercial and class action litigation; and Plaintiffs intend to prosecute this action vigorously. The interests of the Class members will be fairly and adequately protected by Plaintiffs and their counsel.

**Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2)**

36. Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to Class as a whole.

**Superiority – Federal Rule of Civil Procedure 23(b)(3)**

37. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against the Defendants, so it would be impracticable for Class members to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory

judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CLAIMS FOR RELIEF COUNT I

Violation of the Unfair Competition Law ("UCL"), Mass. Gen. Law, Chap. 93A

(On behalf of the Massachusetts Class)

38. Plaintiffs reassert and reallege all of the allegations contained in the foregoing paragraphs as though the same were fully set forth herein.

39. Plaintiff Afrasiabi brings this claim individually and on behalf of the Massachusetts Class.

40. Plaintiff and Defendant are "persons" within the meaning of the Mass. Gen. Law, Chap. 93A.[5] The law defines unfair competition to include any "unlawful, unfair or fraudulent business act or practice," as well as any "unfair, deceptive, untrue or misleading advertising."

41. In the course of conducting business, Defendants committed unlawful business practices by, among other things, making the false representations and omissions of

---

[5] : Known as the Consumer Protection Act, it allows individuals and businesses to sue for unfair methods of competition and deceptive practices, recovering actual damages, double or triple damages for willful violations, and attorney's fees.

material facts, as set forth more fully herein, and violating Civil Codes and Business & Professions Codes and the common law.

42. Plaintiff reserves the right to allege other violations of law, which constitute other unlawful business acts or practices. Such conduct is ongoing and continues to this date.

43. In the course of conducting business, Defendants committed "unfair" business practices by, among other things, making the representations (which also constitute advertising within the meaning of Mass. Gen. Law 93 A and omissions of material facts regarding the movie Odyssey in its advertising, as set forth more fully herein. There is no societal benefit from false advertising – only harm. Plaintiff and the other Class members paid for a product that did not deliver the content promised by Defendants' advertising. While Plaintiff and the other Class members were harmed, Defendants were unjustly enriched by their false misrepresentations and omissions. As a result, Defendants' conduct is "unfair," as it offended an established public policy. Further, Defendants engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

44. Further, as set forth in this Complaint, Plaintiff alleges violations of consumer protection, unfair competition, and truth in advertising laws in Massachusetts and other states, resulting in harm to consumers. Defendants' acts and omissions also

violate and offend the public policy against engaging in false and misleading advertising, unfair competition, and deceptive conduct towards consumers. This conduct constitutes violations of the unfair prong of Mass. Gen. Law 93A. There were reasonably available alternatives to further Defendants' legitimate business interests, also prohibits any "fraudulent business act or practice." In the course conducting business, Defendants committed "fraudulent business act or practices" by, among other things, making the representations (which also constitute advertising within the meaning of Gen. Law 93A) and omissions of material facts regarding the movie Odyssey, as set forth more fully herein. Defendants made the misrepresentations and omissions regarding the content of the film Odyssey, among other ways, by misrepresenting that the scene in question in the movie Odyssey, above-stated, would appear in the publicly released film when Defendants knew that their representation was false and misleading.

45. Defendants' actions, claims, omissions, and misleading statements, as more fully set forth above, were also false, misleading and/or likely to deceive the consuming public within the meaning of Mass. Gen. Law 93A.

46. Plaintiff and the other members of the Class have in fact been deceived as a result of their reliance on Defendants' material representations and omissions, which are described above. This reliance has caused harm to Plaintiff and the other members of the Class, each of whom paid to view or purchased tickets for

Defendants' film Odyssey. Plaintiff and the other Class members have suffered injury in fact and lost money as a result of paying to view the movie Odyssey due to Defendants' unlawful, unfair, and fraudulent practices.

47. Defendants knew and intended, or at least should have known, that their material misrepresentations and omissions would be likely to deceive and harm the consuming public and result in consumers making payments to Defendants for their falsely advertised film.  As a result of its deception, Defendants were unjustly enriched by receiving payments from Plaintiff and the Class in return for providing Plaintiff and the Class a movie product that does not include the particular battle scene as advertised.

48. Unless restrained and enjoined, Defendants will continue to engage in the unlawful, unfair and fraudulent conduct described herein. Accordingly, Plaintiff, individually and on behalf of all others similarly situated, and on behalf of the general public, seeks restitution from Defendants of all money obtained from Plaintiff and the other members of the Class collected as a result of Defendants' unfair competition, and for an injunction prohibiting Defendants from continuing and further engaging in its unlawful, unfair and fraudulent conduct, requiring corrective advertising, and awarding all other relief this Court deems appropriate.

## COUNT II Violation of the Massachusetts False Advertising Law

(On behalf of the Massachusetts Class)

49. Plaintiffs reassert and reallege all of the allegations contained in the foregoing paragraphs as though the same were fully set forth herein.

50. Plaintiff Afrasiabi brings this claim individually and on behalf of the Massachusetts Class.

51. The Massachusetts law expressly notes that unfair or deceptive trade practices include: a. False, falsely disparaging, or misleading oral or written statement, visual description, or other representation of any kind which has the capacity, tendency, or effect of deceiving or misleading consumers; b. Representation that: i. Consumer goods, consumer realty, or consumer services have a sponsorship, approval, accessory, characteristic, ingredient, use, benefit, or quantity which they do not have; c. Deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of any material fact with the intent that a consumer rely on the same in connection with: i. The promotion or sale of any consumer goods, consumer realty, or consumer service.

52. As a direct and proximate result of Defendants' untrue and misleading advertising, Plaintiff and the Class members have suffered injury in fact and have lost money. Accordingly, Plaintiff requests that the Court order the Defendants to restore the money Defendants have received from Plaintiff and the members of the

Class, and that the Court enjoin Defendants from continuing its unlawful practices, and engage in corrective advertising.

## COUNT III Unjust Enrichment

### (On behalf of the Massachusetts Class)

53. Plaintiffs reassert and reallege all of the allegations contained in the foregoing paragraphs as though the same were fully set forth herein.

54. Plaintiffs bring this claim individually and on behalf of the Class.

55. This claim is pleaded in the alternative to the other claims set forth herein.

56. As the intended and expected result of its conscious wrongdoing, Defendants have profited from and benefitted from the sales, rentals, licenses, and public theater presentations of the movie Odyssey.

57. Defendants have intentionally sought and voluntarily accepted and retained these profits and benefits, with full knowledge and awareness that, as a result of Defendants' misconduct alleged herein, Plaintiffs and the Class were not receiving a product – the movie Odyssey – of the quality, nature, fitness or value that had been represented by Defendants, and that a reasonable consumer would expect. Specifically, Plaintiffs and the Class members expected that when they purchased the movie Odyssey's ticket, they expected to watch a lavish battle of armies by the ocean, and their expectations were frustrated when they watched the movie and

found out they had been lied to by the movie's promoters through their deceptive marketing strategy.

58. Defendants have been unjustly enriched by its fraudulent, deceptive, unlawful, and unfair conduct, and its withholding of benefits and unearned monies from Plaintiffs and the Class, at the expense of these parties.

59. Equity and good conscience militate against permitting the Defendants to retain these profits and benefits

## COUNT VI Breach of Express Warranty in Violation of the Uniform Commercial Code

### (on behalf of the Massachusetts Class)

60. Plaintiffs reassert and reallege all of the allegations contained in the foregoing paragraphs as though the same were fully set forth herein.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the other members of the proposed Class, respectfully request that the Court enter judgment in Plaintiffs' favor and against Defendants as follows:

A. Declaring that this action is a proper class action, certifying the Classes as requested herein, designating Plaintiff as Class Representative and appointing the undersigned pro se counsel as Class Counsel;

B. Ordering restitution and disgorgement of all profits and unjust enrichment that Defendants obtained from Plaintiffs and the Class members as a result of Defendants' unlawful, unfair and fraudulent business practices;

C. Ordering injunctive relief as permitted by law or equity, including enjoining the Defendants from continuing the unlawful practices as set forth herein, and ordering the Defendants to engage in a corrective advertising campaign;

D. Ordering damages, including punitive damages, for Plaintiffs and the Classes;

E. Ordering the Defendants to pay attorneys' fees and litigation costs to Plaintiffs and the other members of the Class;

F. Ordering the Defendants to pay both pre- and post-judgment interest on any amounts awarded; and

G. Ordering such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs respectfully demand a trial by jury in this action.

Respectfully submitted,

Kaveh Lotfolah Afrasiabi,
73 Lionel Ave,
Waltham, Massachusetts, 02452
(617)8701526

Dated: August 2, 2026